IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:12-CT-3060-FL

KEITH BAYSEAM OLIVER,                    )
                                          )
                    Plaintiff,            )
                                          )
        v.                                )                    ORDER
                                          )
DALE BUTLER, SHERIFF DONNIE               )
HARRISON, and HEIDI STEINBECK,            )
                                          )
                    Defendants.           )


        This matter comes before the court on defendants' motion for summary judgment (DE 114)

pursuant to Federal Rule of Civil Procedure 56. Plaintiff responded to defendants' motion. Also

before the court is plaintiff's unopposed motion to enter a response to defendants' supplemental

memorandum (DE 126). In this posture, the issues raised have been fully briefed and are ripe for

adjudication. For the following reasons, the court grants plaintiff's motion to supplement and grants

defendants' motion for summary judgment.

## STATEMENT OF THE CASE

        On March 12, 2012, plaintiff, a former pretrial detainee incarcerated at the Wake County

Detention Center (the "detention center"), filed this action *pro se* pursuant to 42 U.S.C. § 1983

against defendants Wake County Sheriff, Donnie Harrison ("Harrison") and Director of Wake

County Detention Center, Dale Butler ("Butler"). Plaintiff subsequently filed several motions to

amend as well as numerous other filings.

1

On September 7, 2012, the court conducted a frivolity review of plaintiff's complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and directed plaintiff to particularize his complaint. As part of its September 7, 2012, order, the court instructed plaintiff that the amended complaint would supplant plaintiff's previous filings and that the court would not review plaintiff's other filings to glean any misplaced claims.

Plaintiff complied with the court's September 7, 2012, order. In his amended pleading, plaintiff alleges that defendants Harrison and Butler violated his rights pursuant to the Fourteenth Amendment to the United States Constitution because they implemented a policy which required plaintiff to sleep on the detention center's cement floor for approximately forty (40) days, even after he injured his back on February 12, 2012, while getting up off of the floor. Plaintiff also alleges that his sleeping arrangement violated the Fourteenth Amendment because he "continuously had to remove filth from [his] mat (sleeping area) whereas the floor was littered with grime and human waste: dead skin off the soles of other people's feet and hair breakage." (Compl. (DE 33), p. 2.) Plaintiff states that defendants Harrison and Butler ignored his requests to be removed from the floor. (Id.) Plaintiff also alleges that defendants Harrison and Butler failed to ensure that he was provided meals with adequate portions at the appropriate time intervals. As a result, plaintiff states that he experienced severe headaches, dizzy spells, weight loss and "abnormal bouts of fatigue." (Id. p. 3.) Finally, plaintiff challenges the constitutionality of the detention center's policy of providing inmates two clean uniforms and underwear per week. Plaintiff states that the policy is inadequate because he sweats profusely and has "loud body odor." (Id. p. 4.) Plaintiff also states that he has developed sheaves between his inner thighs and a re-occurring genital itch. (Id.)

2

In January 2013, plaintiff filed two motions to amend his complaint. Plaintiff additionally filed a motion to impose sanctions, motions to file supplemental evidence, a motion to compel, and a motion for the issuance of subpoenas for depositions. On April 23, 2013, the court entered an order denying plaintiff's motion for sanctions, motion to compel,[1] and motion for issuance of subpoenas for depositions. The court additionally denied plaintiff's motions to amend as moot and directed plaintiff to file one amended pleading. Finally, the court granted plaintiff's motions to file supplemental evidence.[2]

On April 30, 2014, plaintiff filed his amended pleading and included a new claim for retaliation in violation of the First Amendment to the United States Constitution against Butler and Harrison, as well as Administrative Officer, Heidi Steinbeck ("Steinbeck"). Specifically, plaintiff alleged that defendants Steinbeck, Butler, and Harrison transferred plaintiff to Central Prison, a facility operated by the North Carolina Department of Public Safety ("DPS"), in retaliation for plaintiff filing this action. As a result, plaintiff asserts he was denied access to a law library, telephone privileges, and visitation. The court subsequently allowed plaintiff to proceed with his new retaliation claim. Plaintiff then filed, *inter alia*, a motion "for order; ordering defendants to return lawfully confiscated law books," motions to compel discovery, and a renewed motion to compel.

---

[1] This motion was denied without prejudice.

[2] As part of this ruling, plaintiff was warned that the court would not look to the supplemental evidence to discern any new claims. Rather, plaintiff was instructed to assert any new claims in his amended complaint.

In the interim, on April 7, 2014, defendants filed a motion for summary judgment,[3] arguing that plaintiff is unable to establish a constitutional violation. Alternatively, defendants argue that they are entitled to the affirmative defense of qualified immunity. The motion was fully briefed. On April 23, 2014, plaintiff filed a motion to strike the affidavit of Wake County Medical Director, Dr. Obi Umesi ("Dr. Umesi"), which defendants submitted in support of their motion for summary judgment. Plaintiff contended that Dr. Umesi's statements regarding plaintiff's medical history and care at the detention center were, *inter alia*, unsupported by plaintiff's medical records.

On June 6, 2014, the court entered an order construing plaintiff's motion for a court order directing "defendants to return lawfully confiscated law books," as a motion to amend. The court denied plaintiff's motion as futile, determining that the incident arose subsequent to the date plaintiff filed this action, and plaintiff could not have exhausted his administrative remedies for this claim pursuant to 42 U.S.C. § 1997e(a) prior to filing this action. The court also denied as moot plaintiff's renewed motion to compel on the grounds that it solely related to plaintiff's complaint in a separate case, Oliver v. Butler, No. 5: 12-CT-3157-FL (E.D.N.C.). As for plaintiff's remaining motions to compel, the court denied the motions. Finally, in response to plaintiff's motion to strike, the court directed defendants to supplement their motion for summary judgment to address plaintiff's retaliation claim, to provide a copy of plaintiff's medical records, and to supplement Dr. Umesi's

---

[3] Plaintiff also filed a separate *pro se* complaint pursuant to 42 U.S.C. § 1983 against the same defendants named in the instant action. See Oliver v. Butler, No. 5:12-CT-3157-FL (E.D.N.C. Aug. 6, 2012) ("Oliver II"). On May 9, 2013, defendants in Oliver II moved to consolidate Oliver II with the instant action. On August 1, 2013, the court denied defendants' motion to consolidate on the grounds that each of plaintiff's actions raise different issues. However, defendants, in their motion for summary judgment, brief all of the issues raised in both cases, despite the fact that the actions were not consolidated. Accordingly, the court disregards the portions of defendants' motion for summary judgment which concern the claims he raised in Oliver II, as they are not part of this action.

affidavit. In light of the court's direction to defendants to supplement Dr. Umesi's affidavit, the court denied without prejudice plaintiff's motion to strike.

Defendants complied with the court's order to supplement their pending motion. Plaintiff subsequently filed a motion for leave to file a response to defendants' supplemental memorandum, along with plaintiff's supplemental memorandum.

## STATEMENT OF THE FACTS

The following is a summary of the undisputed facts in this action, with exceptions as noted where the facts presented by the parties diverge. The court begins with the facts relating to plaintiff's sleeping assignment on the floor. On February 12, 2012, plaintiff was incarcerated as a pretrial detainee at the detention center in Raleigh, North Carolina. (Compl. (DE 33), p. 2; Ans. (DE 87), p.2). During this time, the detention center experienced inmate overcrowding which caused some inmates to sleep on mattresses on the floor of the detention center's day room for brief periods of time. (Harrison Aff. ¶ 6.) Plaintiff was assigned to sleep on the floor when he arrived at the detention center. (Id.).

At the time plaintiff was incarcerated at the detention center, the detention center's practice was to move detainees/inmates from the day room to single cell accommodations once individual cells became available. (Id.) Plaintiff was assigned to a regular cell on February 17, 2012,[4] and the detention center's overcrowding issues ultimately were alleviated by the opening of a second Wake County Detention Center in May 2012. (DE 117 Ex. 8A, p.1; Harrison Aff. ¶ 6.) In September 2012, plaintiff filed a grievance stating that he needed medical treatment for a back injury he

---

[4] The court notes that plaintiff provides inconsistent statements as to the length of time he spent sleeping on the detention center floor. For instance, plaintiff alleges in his complaint that he was subject to the detention center's overcrowded conditions from the date of his incarceration through the "beginning of April 2012." (Compl. (DE 33), p. 2.) Plaintiff later states that he slept on the floor for only fourteen (14) days. See DE 117, p. 11.

incurred on February 18, 2012.[5]  (DE 117 Ex. 9A.)  Plaintiff subsequently received medical treatment for his back pain, including pain medication.  (DE 124, pp. 55, 62, 97, 98.)

The court now turns to the facts relating to plaintiff's complaint regarding the nutritional adequacy of his diet and the jail's laundry policy.  The detention center provides inmates three meals per day.  (Harrison Aff. ¶ 12.)  A professional dietician approves the detention center's menus to ensure that they meet the standards set forth by the State of North Carolina.  (Id.)  The detention center's food service is regularly inspected and consistently meets the minimum caloric and nutritional standards.  (Id.)

As for the detention center's laundry policy, the policy, in part, provides inmates two uniforms per week.  (Id. ¶ 5.)  On July 10, 2012, plaintiff wrote to the North Carolina Department of Health and Human Services, Division of Health Services Regulation, and alleged that the detention center's policy of providing detainees two uniforms per week was insufficient.  (Id.; DE 76, Ex. O.)  On October 4, 2012, State Jail Consultant Chris Wood responded to plaintiff by letter and informed plaintiff that, while there is no specific statute that addresses the frequency of clothing exchange, it has generally been the frequency of once per week.  (Id.)  Chris Wood further informed plaintiff that the detention center's policy of exchanging clothing once per week is sufficient.  (Id.)

Finally, the court sets forth the facts relating to plaintiff's retaliation claim.  Plaintiff declared himself a member of the Orthodox Jewish religion, and requested a Kosher diet on April 5, 2012. (Steinbeck Aff. ¶¶ 5, 8 and Ex. E.)  At the time of plaintiff's request, the detention center's policy was to provide either a Lacto-Ovo-Vegetarian Diet or an Alternative Diet that did not contain pork,

---

[5]  Plaintiff, in his complaint, alleged that his back injury occurred on February 12, 2012.

shellfish, or catfish.  (Id. ¶ 9.)  As a result, the detention center staff informed plaintiff that the detention center did not provide Kosher meals, but that he could elect a vegan diet.  (Id. ¶ 10.)

On August 6, 2012, plaintiff filed a lawsuit pursuant to 42 U.S.C. § 1983, alleging, *inter alia*, that defendants Harrison, Butler, and Steinbeck violated his rights pursuant to the Religious Land Use and Institutionalized Persons Act ("RLUIPA") and the  First Amendment to the United States Constitution.  See Oliver v. Butler, No. 5:12-CT-3157-FL (E.D.N.C. Aug. 6, 2012).  Defendants later discovered that DPS modified their religious diet policy in August 2012, and began to offer Kosher meal plans to inmates with sincerely held religious beliefs that a Kosher diet was necessary.  (Steinbeck Aff. ¶  15.)

On December 21, 2012, plaintiff was transferred to DPS custody in Central Prison pursuant to a safekeeping order in accordance with N.C. Gen. Stat. § 162-39.  (Id. ¶ 19 and Ex. 5.)  The safekeeping order stated that plaintiff was being transferred to DPS custody for security and management purposes.  (Id.)  The order stated that "[plaintiff] has lawsuits against the county and has become a threat to the security of jail operations."[6]  (Id.)  Plaintiff at some point began receiving a Kosher diet after his transfer to DPS custody.  (See Oliver II DE 59, Ex. 1. p. 2.)

DPS did not initially allow plaintiff to bring his property, including any legal materials, with him to Central Prison when he was transferred on December 21, 2012.  (Id. ¶ 19.)  DPS later allowed the detention center to bring plaintiff's legal materials to Central Prison on December 31, 2012.  (Id.)

_____

[6]  Defendants states that plaintiff filed over sixty (60) written grievances while at the detention center, was placed on lock down for misconduct on five occasions, and was caught tearing pages out the books in the detention center's law library.  (Steinbeck Aff. ¶ 12.)  Plaintiff disputes these facts, and defendants have not provided any evidentiary support for these assertions.  That said, although the exact number of grievances plaintiff filed at the detention center is unclear, the record contains numerous grievances filed by plaintiff.  (DE 4, 6, 13, 14, 16, 17, 18, 21, 22, 59, 72, 117.)

DPS, however, would not permit plaintiff to have four bound books. (Id.) Plaintiff was convicted of North Carolina State felonies on February 27, 2013, and remained in DPS custody. (Harrison Aff. ¶ 8.)

**DISCUSSION**

A.     Motion to Supplement

Plaintiff seeks leave of court to supplement his response to defendants' motion for summary judgment. For good cause shown, plaintiff's motion is GRANTED, and the court will consider plaintiff's July 7, 2014, supplemental filing.

B.     Motion for Summary Judgment

1.     Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

2.     Analysis

Defendants raise the defense of qualified immunity. Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established

statutory or constitutional rights of which a reasonable person would have known." Harlow v.

Fitzgerald, 457 U.S. 800, 818 (1982). In other words, a government official is entitled to qualified

immunity when (1) the plaintiff has not demonstrated a violation of a constitutional right, or (2) the

court concludes that the right at issue was not clearly established at the time of the official's alleged

misconduct. Pearson v. Callahan, 555 U.S. 223, 236 (2009). The court will now consider plaintiff's

prison conditions claims in turn.

As a pretrial detainee, plaintiff has a due process right against conditions that amount to

punishment. Bell v. Wolfish, 441 U.S. 520, 535-38 (1979). To establish that a condition or

restriction of confinement is constitutionally impermissible "punishment," a pretrial detainee must

show "either that it was (1) imposed with an expressed intent to punish or (2) not reasonably related

to a legitimate nonpunitive governmental objective, in which case an intent to punish may be

inferred." Martin v. Gentile, 849 F.2d 863, 870 (4th Cir.1988) (citing Bell, 441 U.S. at 538–40).

Prohibited punishments include those which "involve the unnecessary and wanton infliction of

pain." Estelle v. Gamble, 429 U.S. 97, 103 (1976) (quoting Gregg v. Georgia, 428 U.S. 153 (1976)).

As a practical matter, the analysis under the due process clause and the analysis under the

Eighth Amendment is materially indistinguishable. See, e.g., Riley v. Dorton, 115 F.3d 1159,

1166–67 (4th Cir. 1997) (en banc), abrogated on other grounds by Wilkins v. Gaddy, 559 U.S. 34

(2010) (per curiam); Hill v. Nicodemus, 979 F.2d 987, 991–92 (4th Cir.1992). "In order to make

out a prima facie case that prison conditions violate the Eighth Amendment, a plaintiff must show

both '(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison

conditions on the part of prison officials.'" Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir.1993)

(quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). The first prong is an objective one—the

9

prisoner must show that "the deprivation of [a] basic human need was *objectively* sufficiently serious"—and the second prong is subjective—the prisoner must show that "*subjectively* the officials act[ed] with a sufficiently culpable state of mind." See Strickler, 989 F.2d at 1379 (internal quotations omitted).

To establish the objective prong of a prison conditions claim, an inmate or detainee must establish that he received an injury. Id. at p. 1381. In particular, "[o]nly an extreme deprivation, that is, a 'serious or significant physical or emotional injury resulting from the challenged conditions,' or substantial risk thereof, will satisfy the objective component of an Eighth Amendment claim challenging the conditions of confinement." De'lonta v. Johnson, 708 F.3d 520, 525 (4th Cir. 2013).

As for the second prong of the test, an inmate or detainee must establish that the defendant acted with a sufficiently culpable state of mind-that of deliberate indifference. See Farmer v. Brennan, 511 U.S. 825, 834 (1994). "Deliberate indifference entails something more than mere negligence, ... [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." See id. at 835. It requires that a prison official actually know of and disregard an objectively serious condition, medical need, or risk of harm. Id. at 837; Shakka v. Smith, 71 F.3d 162, 166 (4th Cir.1995).

a.    Overcrowding Conditions

Plaintiff alleges defendants Harrison and Butler violated his constitutional rights because they facilitated a policy pursuant to which plaintiff was required to sleep on a mattress on the floor from February 12, 2012, through February 17, 2012. (See DE 117, Ex. 8A.) Plaintiff further alleges

10

that he injured his back on February 12, 2012, while getting off of the floor, and that defendants Harrison and Butler ignored his complaints regarding these conditions.

Defendants Harrison and Butler do not dispute that plaintiff temporarily was required to sleep on a mattress on the floor for approximately five days due to overcrowding. (see Harrison Aff. ¶ 6; DE 117, Ex. 8A.)  Being assigned to sleep on a mattress on the floor itself is not enough to give rise to a constitutional violation.  Crowe v. Leeke, 540 F.2d 740, 742 (4th Cir. 1976) ("Standing alone, Crowe's claim that, until transferred to a new facility now under construction, he is forced to sleep in an overcrowded cell is not a condition of confinement which shocks the conscience so as to fall within the constitutional prohibition against cruel and unusual punishment."); Mann v. Smith, 796 F.2d 79, 85 (5th Cir.1986) (stating that pretrial detainees do not have a constitutional right to sleep on an elevated bed); see also Williams v. Griffin, 952 F.2d 820, 824 (4th Cir. 1991) ("It is clear that double or triple celling of inmates is not per se unconstitutional.").

Although plaintiff directed the court to the stack-a-bunk product as an available alternative to accommodate potential overcrowding, the detention center's decision not to pursue such alternative does not shock the conscience, particularly where floor assignments were temporary and where the Wake County Detention Center facility was scheduled to open in May 2012.  (Harrison Aff. ¶ 6.)  Thus, the court finds that detention center's policy requiring detainees to be temporarily housed on the detention center's floor did not violate the Fourteenth Amendment.

As for plaintiff's contention that the fact that he was required to remain on the floor despite his back injury violated the Fourteenth Amendment, there is no evidence in the record establishing that plaintiff complained to either defendant Harrison or Butler about the situation prior to the date plaintiff was transferred to a regular cell.  Instead, the record reflects that plaintiff's grievances with

respect to this issue were filed after April 2012, when plaintiff was moved to a regular cell. (See DE 117, Ex. 9A.); see DePaola v. Ray, No. 7:12cv00139, 2013 WL 4451236, at *8 (W.D. Va. Aug. 16, 2013) ("A superior's after-the-fact denial of a grievance [or response to a letter] falls short of establishing § 1983 liability.").

Even if defendants Harrison and Butler had notice of plaintiff's complaints prior to the date plaintiff was transferred to a regular cell, plaintiff still would not be entitled to relief. Specifically, the record reflects that plaintiff complained about his back pain to medical staff and that medical staff treated plaintiff for back pain. (Umesi Supp. Aff. ¶¶ 7, 10; DE 124, pp. 55, 62, 97, 98; DE 117, p. 11.) The record further reflects that plaintiff was instructed that a firm mattress was better for his chronic back pain then a softer mattress. (Id. ¶ 10.) As supervisory officials, defendants Harrison and Butler were entitled to rely on the medical judgment and expertise of prison physicians and medical staff concerning the course of treatment and medical orders necessary for plaintiff. See Shakka v. Smith, 71 F.3d 162, 167 (4th Cir. 1995); Miltier v. Beorn, 896 F.2d 848, 854–55 (4th Cir.1990), abrogated on other grounds by, Farmer, 511 U.S. at 837.[7] Accordingly, plaintiff has failed to show that defendants Harrison or Butler actually knew of and disregarded a substantial risk of serious injury to him, that plaintiff was deprived a "basic need" and that this deprivation was attended by deliberate indifference on the part of the defendants, or that defendants had an express intent to punish him. Parrish v. Cleveland, 372 F.3d 294, 302 (4th Cir. 2004); Strickler, 989 F.2d at 1379. Because plaintiff has not established a constitutional violation, defendants Harrison and Butler are entitled to qualified immunity for this claim.

---

[7] The record further reflects that plaintiff initially informed detention center medical staff that his chronic back pain was due to a construction work injury he had incurred six months prior to his medical appointment. (Umesi Supp. Aff. ¶ 7.)

b.      Laundry Policy

Plaintiff challenges the constitutionality of the detention center's policy of providing two clean uniforms and underwear per week.  Plaintiff claims that the detention center's policy is inadequate because he sweats profusely and has a "loud body odor."  (Compl. (DE 33), p. 4.)  As a result, plaintiff states that he has developed sheaves between his inner thighs and a re-occurring genital itch.  (Id.)

On July 10, 2012, plaintiff contacted the North Carolina Department of Health and Human Services, Division of Health Services Regulation, and complained about the detention center's laundry policy.  (Harrison Aff. ¶ 5; DE 76, Ex. O.)  On October 4, 2012, State Jail Consultant Chris Wood responded to plaintiff's inquiry and stated that the detention center's policy of exchanging inmate clothing once per week meets the current State of North Carolina standards.  (Id.)  Thus, defendants had no reason to believe that their laundry policy violated plaintiff's constitutional rights.  Moreover, this policy does not offend contemporary standards of decency.  See Beverati v. Smith, 120 F.3d 500, 503 (4th Cir. 1997) (holding that administrative segregation for six months with vermin; human waste; flooded toilet; unbearable heat; cold food; dirty clothing, linens, and bedding; longer periods in cell; no outside recreation; no educational or religious services; and less food was not so atypical as to impose significant hardship); see also, Smith v. Does, No. 5:06–cv–00065, 2009 WL 305099 at *4-5 (S.D.W.Va. Feb. 6, 2009) (complaints by inmates in 12-man bubble cells that they had inadequate ventilation, no desk or chair, inadequate space between beds, inadequate head space for inmates on top bunk, poor lighting, poor inmate hygiene resulting in offensive odor in the bubble housing areas, and other complaints, were not violations of the Eighth Amendment).

Finally, as previously noted, to state a constitutional claim based on conditions of confinement, a plaintiff must allege "a serious or significant physical or emotional injury resulting from the challenged conditions." Strickler, 989 F.2d at 1381. Here, plaintiff provides no reason why sheaves and occasional genital itching are serious medical needs. See Harrod v. Baumgardner, No. DKC-08-3299, 2009 WL 2151857, at *5 (D. Md. July 14, 2009) ("It does not appear that Plaintiff's rash constitutes a serious medical condition or that Defendants were deliberately indifferent to his condition."), aff'd, 334 F. App'x 549 (4th Cir. 2009); see also, Bonham v. Pearson, No. 1:10cv798, 2013 WL 4829319, at *7 (E.D. Va. Sept. 9, 2013) ("The specific ailments plaintiff alleges here–some sort of rash . . . on his hands, sores inside his noes, a dry cough, sore throat, headaches and nausea–are not sufficiently serious even in the aggregate to warrant constitutional protection") (quotation and citation omitted). Further, there is no indication in plaintiff's medical records that he complained about any rash or itching related to his clothing. (See DE 124). Because plaintiff has failed to allege that a serious or significant physical or emotional injury resulted from the challenged prison conditions, he has failed to state a claim for a Fourteenth Amendment violation based on alleged conditions of confinement. Thus, Harrison and Butler are entitled to qualified immunity for this claim.

    c.    Food Service

Plaintiff alleges that defendants Harrison and Butler "failed to ensure that the food service providers . . . serve an appropriate amount of food, at [] appropriate time intervals." (Compl. (DE 33) p. 3.) As a result, plaintiff states that he experienced headaches and dizzy spells, which stem from hunger pains. Plaintiff also states that he suffered an "extreme weight los[s]" and experienced "abnormal bouts of fatigue." (Id.)

14

It is well-settled that inmates have a right to "nutritionally adequate food, prepared and served under conditions that do not present an immediate danger to the health and well being of the inmates who consume it." Shrader v. White, 761 F.2d 975, 986 (4th Cir. 1985) (internal quotation marks and citations omitted). In this case, aside from plaintiff's conclusory allegations that the detention center's food was inadequate and that he experienced weight loss, plaintiff failed to provide any factual support such as amount, duration, or timing of the weight loss, which is insufficient to state a constitutional claim. White v. White, 886 F.2d 721, 723 (4th Cir. 1989) (stating minimum level of factual support required). The court additionally notes that there is no indication of a significant weight loss in plaintiff's medical records. (See DE 124.) Finally, defendant Harrison states in his affidavit that a professional dietician approves the detention center's menus and ensures that they meet the standards set forth by the State of North Carolina. (Harrison Aff. ¶ 12.) Plaintiff has presented no evidence to suggest otherwise. Based upon the foregoing, plaintiff has failed to establish a constitutional violation, and defendants Harrison and Butler are entitled to qualified immunity for this claim.

d.      Unsanitary Living Conditions

Plaintiff asserts that defendants Harrison and Butler were deliberately indifferent to his conditions of confinement because they housed plaintiff in unsanitary conditions. Specifically, plaintiff states that the detention center's floor was littered with grime and human waste, which included "dead skin off the soles of other people['s] feet and hair breakage." (Compl. (DE 33), p. 2.) As stated, to state an actionable claim, a plaintiff must show that the conditions complained of rise to the level of a deprivation of a basic human need such as food, warmth, or exercise. Williams v. Griffin, 952 F.2d 820, 824 (4th Cir. 1991). Moreover, prison officials cannot be held liable unless

15

they knew of and disregarded an excessive risk to inmates' health or safety. See Farmer, 511 U.S. at 834.

In this case, plaintiff has not alleged that he suffered any ill effects from the alleged conditions. See 42 U.S.C. § 1997e(e); Shakka, 71 F.3d at 166 ("[T]o demonstrate that a deprivation is extreme enough to satisfy the objective component of an Eighth Amendment claim, a prisoner must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions or demonstrate a substantial risk of such serious harm resulting from the prisoner's unwilling exposure to the challenged conditions." (citations and internal quotation marks omitted)). Thus, plaintiff cannot establish that he suffered a deprivation of a basic human.

Plaintiff also cannot establish that defendants acted with deliberate indifference to the alleged unsanitary conditions. For instance, the record reflects that the detention center facilities were regularly inspected by the North Carolina Department of Human Resources, Division of Facilities Services, the Wake County Health Department, and the Raleigh Fire Marshal's Office during plaintiff's incarceration at the detention center, and that the facility met or exceeded all State of North Carolina minimum requirements and passed all inspections. (Harrison Aff. ¶ 7.) Plaintiff has not presented any evidence to the contrary. Additionally, the conditions described by plaintiff do not violate contemporary standards of decency. See Beverati, 120 F.3d at 503; see also Gallishaw v. Reed, No. 9:09-2566-CMC-BM, 2010 WL 2622931, at * (D.S.C. May 28, 2010) ("During the time period set forth in the complaint, Plaintiff was a prisoner in a state correctional facility, not a hotel. It should be expected that conditions in such a setting are oftentimes less than ideal.") (citations omitted), aff'd, 397 F. App'x 852 (4th Cir. 2010); Harris v. Fleming, 839 F.2d 1232, 1236 (7th Cir. 1988) ("Inmates cannot expect the amenities, conveniences and services of a good hotel.").

16

Finally, there is no evidence that Harrison or Butler acted with deliberate indifference to any unsanitary living conditions. Accordingly, plaintiff has not established a Fourteenth Amendment violation, and Harrison and Butler are entitled to qualified immunity for this claim.

e.      Retaliation

Plaintiff alleges that defendants Harrison, Butler, and Steinbeck violated his constitutional rights when they transferred him from the detention center to DPS custody at Central Prison pursuant to a safekeeping order in retaliation for filing the instant lawsuit in violation of the First Amendment to the United States Constitution. To prevail on a claim of retaliation, plaintiff must demonstrate "either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). To state a claim for retaliation, an inmate must show that the alleged retaliation had an adverse impact on the exercise of his constitutional rights. Id. at 75. "In addition, [a] plaintiff must come forward with specific evidence 'establish[ing] that but for the retaliatory motive the complained of incident[s] . . . would not have occurred.' " Scott v. Kelly, 107 F. Supp. 2d 706, 709 (E.D. Va. 2000) (internal quotation omitted), aff'd, 6 F. App'x 187 (4th Cir. 2001). Moreover, the Fourth Circuit has stated, in the prison context, that claims of retaliation are treated with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct." Adams, 40 F.3d at 74.

The court begins by examining the first requirement for establishing a retaliation claim--whether the alleged retaliation had an adverse impact on the exercise of plaintiff's constitutional rights. Inmates do not have the constitutional right to be incarcerated in any particular prison, jail, or confinement facility of any particular security level. See, e.g., Meachum v. Fano, 427 U.S. 215,

223-24 (1976); Slezak v. Evatt, 21 F.3d 590, 594 (4th Cir. 1994). Further, the United States Supreme Court has held that a change in the condition of a prisoner's confinement that does not exceed the scope of the original sentence does not implicate the Due Process Clause unless it "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995).

Here, plaintiff contends that his transfer to Central Prison violated his due process rights because it adversely impacted his visitation and telephone privileges and because he was prevented from possessing four of his law books. With respect to plaintiff's contention that telephone and visitation privileges were impacted by his transfer, there is no evidence in the record to establish that plaintiff was denied all visitation or telephone privileges.[8] Additionally, pretrial detainees do not have a constitutional right to visitation or telephone privileges. See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460-461 (1989) (finding no right to visitation guaranteed by the Due Process Clause); United States v. Alkire, No. 95-7885, 1996 WL 166400, at * 1 (4th Cir. Apr. 10, 1996) ("There is no constitutional or federal statutory right to use a telephone while in prison."); see also Coil v. Peterkin, No. 1:07CV145, 2009 WL 3247848, at *10 (M.D.N.C. Oct. 5, 2009) ("Since inmates do not have a constitutional right to telephone access, Defendant's denial of telephone access to Plaintiff is not a ground upon which Plaintiff can be granted relief."), aff'd, 401 F. App'x 773 (2010). Thus, plaintiff has not established atypical or extraordinary circumstances with respect to these allegations.

---

[8] Plaintiff submitted an affidavit from his fiancé, Juanette Williams, stating that her visitation rights were suspended by the DPS for a period of four months for failure to meet an undisclosed DPS visitation requirement. (Williams Aff. (DE 117), Ex. 7B.) Ms. Williams ultimately was permitted to visit plaintiff in DPS custody. (Id.)

Regarding plaintiff's contention that he was deprived of his legal material including four law books after his transfer to Central Prison, the courts construes plaintiff's allegations to state that his transfer denied him access to the courts. In order to state a claim for denial of access to the courts, the inmate must show actual injury or that a defendant's conduct hindered his efforts to pursue a legal claim. See, e.g., Lewis v. Casey, 518 U.S. 343, 351–52 (1996); Michau v. Charleston County, 434 F.3d 725, 728 (4th Cir. 2006). The United States Supreme Court held in Lewis that inmates must be provided "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." Lewis, 518 U.S. at 351 (quotation omitted). The right to access the courts extends to direct criminal appeals, habeas corpus proceedings, and civil rights actions challenging conditions of confinement. Id. at 354-55. The actual injury requirement mandates that an inmate "demonstrate that a nonfrivolous legal claim had been frustrated or impeded." Id. at 353. The Court did not extend the holding to include the right to "*litigate effectively* once in court." Id. at 354 (disclaiming language in Bounds v. Smith, 430 U.S. 817, 825 (1977), suggesting otherwise).

In this case, the record reflects that plaintiff's legal material arrived at Central Prison on December 31, 2012, which was shortly after his December 21, 2012, transfer. (Steinbeck Aff. ¶ 19.) The record further reflects that DPS would not accept four of plaintiff's bound legal books. (Id.) Plaintiff's alleged denial of access to his legal materials did not prevent him from filing voluminous pleadings in both this case and Oliver II. Plaintiff also filed another action in January 2014, Oliver v. Riggsbee, No. 5:14-CT-3015-BO (E.D.N.C. filed Jan. 16, 2014). Plaintiff has not presented any evidence or any facts to suggest that any nonfrivolous legal claim has been frustrated or impeded.

Rather, the record reflects that plaintiff has been an active litigant in this court.[9]  Thus, plaintiff has not demonstrated that his transfer to DPS custody interfered with his access to courts.

The court next considers the second requirement for establishing a retaliation claim--whether plaintiff is able to establish that "but for" the retaliatory motive, he would not have been transferred. Plaintiff argues that the language in his safekeeping order itself is evidence that his transfer was executed in retaliation for filing this action.  Specifically, the safekeeping order stated in pertinent part:  "It is necessary to transfer [plaintiff] for safekeeping to the custody of the North Carolina [DPS] in that; . . . Security and Management.  Defendant has lawsuits against the county and has become a threat to the security of jail operations."  (Steinbeck Aff. Ex. 5.)

In response, defendant Butler explains that plaintiff was transferred because he was a management problem and because the DPS could accommodate his request for a Kosher diet.[10] (Butler Aff. ¶ 8.)  Although the parties dispute whether plaintiff engaged in inappropriate behavior while incarcerated at the detention center, it is undisputed that plaintiff filed numerous grievances complaining about the conditions at the detention center.  (DE 4, 6, 13, 14, 16, 17, 18, 21, 22, 59, 72, 117.)  The record further reflects that plaintiff requested a Kosher diet, which was an accommodation that DPS, but not the detention center, could provide.  (Steinbeck Aff. ¶ 5 and Ex. 3.)  More importantly, at most, the impact plaintiff's transfer to DPS custody pursuant to the safekeeping order had on plaintiff's constitutional rights was minimal, given that plaintiff would

---

[9]  To the extent plaintiff alleges an independent claim for denial of access to courts arising out of his delayed access to his legal materials or his inability to receive his four legal books at Central Prison, such claim fails because plaintiff failed to establish any actual injury.  See Lewis, 518 U.S. at 351–52.

[10]  DPS began offering a Kosher meal plan in August 2012.  (Butler Aff. ¶ 6.)  At that time, the detention center did not offer a Kosher meal plan.  (Harrison Aff. ¶ 8.)  Plaintiff now receives a Kosher diet.  (Oliver II (DE 59) Ex. 1.)

have been transferred to DPS custody in any event after his February 27, 2013, conviction on state criminal charges.  (Harrison Aff. ¶ 8.); see Smith v. Yarrow, 78 F. App'x 529, 543 (6th Cir. 2003) ("[T]ransfer from one prison to another prison cannot rise to the level of an adverse action because it would not deter a person of ordinary firmness from the exercise of his First Amendment rights."). Based upon the foregoing, plaintiff has failed to establish the second prong of the retaliation analysis.      Based upon the foregoing, plaintiff failed to establish that his transfer to DPS custody imposed an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life or that he would not have been transferred to DPS custody for any reason other than retaliation.  Thus, plaintiff has failed to establish a constitutional violation for his retaliation claim, and defendants Harrison, Butler, and Steinbeck are entitled to qualified immunity.

## CONCLUSION

For the foregoing reasons, plaintiff's motion to enter a response to defendants' supplemental memorandum (DE 126) and defendants' motion for summary judgment (DE 114) are GRANTED. The Clerk of Court is DIRECTED to close this case.

SO ORDERED, this the 26th day of February, 2015.

LOUISE W. FLANAGAN
United States District Judge